# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 23, 1998

## C.D. BOYD v. TENNESSEE BOARD OF PAROLES, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 97-3614-I      Irvin H. Kilcrease, Jr., Chancellor

---

### No. M1998-00914-COA-R3-CV - Filed April 12, 2001

---

This appeal involves an prisoner's efforts to be paroled from a 35-year sentence for second degree murder. After the Tennessee Board of Paroles declined to parole the prisoner for the sixth time, the prisoner filed a petition for common-law writ of certiorari in the Chancery Court for Davidson County seeking judicial review of the Board's latest decision. The trial court dismissed the petition, and the prisoner has appealed. We affirm the dismissal of the prisoner's petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

C.D. Boyd, Pikeville, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter, and Rebecca E. Miller, Nashville, Tennessee, for the appellee, Tennessee Board of Paroles.

### MEMORANDUM OPINION[1]

In 1982, C. D. Boyd[2] was charged with first degree murder in Shelby County. To avoid the possibility of being sentenced to either death or life imprisonment, she agreed to plead guilty to

---

[1]Tenn. Ct. App. R. 10(b) provides:

> The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

[2]C. D. Boyd, formerly known as Terry Boyd, describes herself as a male to female pre-operative transsexual and has requested that she be referred to as a female.

second degree murder. Accordingly, in November 1983, she was sentenced to thirty-five years in prison. She is currently serving her sentence at the Southeastern Tennessee State Regional Central Correctional Facility in Pikeville.

Ms. Boyd first became eligible to be considered for parole in 1989. Between 1989 and 1997, the Tennessee Board of Paroles declined to release her on parole six times. In November 1997, Ms. Boyd filed a petition for common-law writ of certiorari in the Chancery Court for Davidson County to review the Board's latest refusal to release her on parole. Her petition contains the stock challenges to the Board's decision to deny parole that have been repeatedly raised with little success. Accordingly, on March 3, 1998, the trial court granted the Board's motion to dismiss Ms. Boyd's petition. Ms. Boyd has appealed.

## I.

The scope of review under a common-law writ of certiorari is limited. Courts do not issue the writ to review the intrinsic correctness of an inferior tribunal's decision. Rather, the writ lies to inquire into whether the original decisionmaker exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily. *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn. 1997). Courts grant relief under the common law certiorari writ when the decision being reviewed was arrived at in an unlawful manner. *Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). Thus, if we find that the procedures complained of in this case comport with all constitutional and statutory requirements, we must affirm the trial court's dismissal. Guided by these legal standards, we turn to Ms. Boyd's arguments.

Ms. Boyd first argues that when she was incarcerated in November 1983, the Board's rules contained a presumption that all inmates would be released upon the inmate first becoming eligible for parole.[3] Even though the Board rescinded this presumption in 1985 prior to her first parole hearing, Ms. Boyd contends that the presumption applies to her and that repealing it constitutes an impermissible ex post facto law. We have previously considered and rejected that argument with regard to prisoners in circumstances similar to Ms. Boyd. *Kaylor v. Bradley*, 912 S.W.2d 728, 732-34 (Tenn. Ct. App. 1995). We reject the argument again in this case.

Second, Ms. Boyd argues that the Board violated due process rights by basing its decision to deny her parole on the seriousness of her offense. We have previously considered and rejected that argument. The Board may properly consider the seriousness of an offender's crime in denying parole. *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d at 482-83; *Perry v. Board of Paroles*, No. M1998-01018-COA-R3-CV, 2001 WL 46990, at *1 (Tenn. Ct. App. Jan. 22, 2001) (No Tenn. R. App. P. 11 application filed). This argument fails to state a legal claim.

---

[3]Ms. Boyd cites a superseded rule that stated: "The Board operates under the presumption that each resident who is eligible for parole is a worthy candidate and thus the board presumes that he will be released on parole when he is first eligible." Tenn. Comp. R. & Regs. r. 1100-1-1-.06 (superseded).

Third, Ms. Boyd argues that the Board acted illegally by failing to provide her with a detailed written statement of its reasons for denying parole. We note first that the Board did give her copies of the form the hearing officer and his Board colleagues completed regarding her hearing which contained the reasons for denying her parole. We also note, as we have previously held, that no law requires that state prisoners receive detailed written statements setting out "with particularity" the reasons behind the Board's parole decisions. *Perry v. Board of Paroles*, 2001 WL 46990, at *2. This argument also states no legal claim.

Fourth, Ms. Boyd insists that "Board policy" requires all members, or at least a quorum of the Board, to be present when an inmate convicted of murder is considered for parole release. However, Ms. Boyd does not identify this "policy" or provide any evidence that such a "policy" exists. We note that Tenn. Code Ann. § 40-28-105(d)(4)(k) (Supp. 2000) requires the votes of four members to grant parole in cases of second degree murder, but this statute, which only became effective January 1, 1998, had no applicability to Ms. Boyd's 1997 parole hearing. Furthermore, even if the statute were applicable to Ms. Boyd, it would not support her argument. Nothing in it prevents the Board from deciding parole matters based upon the recommendations of a single hearing officer, *see* Tenn. Code Ann. § 40-28-105(d)(9), which is the procedure that occurred in this case.

Ms. Boyd's fifth argument goes back to her original plea bargain. She says that in exchange for pleading guilty to second degree murder in 1983, the prosecutor promised that she would be sentenced to thirty-five years in the penitentiary and would be released on parole after serving forty percent (later reduced by a change in the law to thirty-five percent) of that sentence. She contends that the prosecutor promised her that thirty-five percent of her thirty-five year sentence would be the maximum she would have to serve before being physically released on parole. Because she has served over forty percent of her sentence without the Board of Paroles releasing her, she argues that the State has breached the plea agreement.

Without question, a prisoner with proper proof can state a claim for relief where the State has failed to live up to its side of a plea bargain. However, we have made it clear that

> Prisoners who assert that they agreed to plead guilty in return for agreements that they would be paroled after serving a specific portion of their sentences must come forward with some competent evidence of these agreements. This evidence is readily available either in the form of a written plea bargain agreement or in the form of a verbatim record of a plea bargain proceeding required to be kept pursuant to Tenn. R. Crim. P. 11(g). Without this evidence, a prisoner has failed to state a claim upon which relief can be granted.

*Ringling v. Tennessee Bd. of Paroles*, No. 01A01-9708-CV-00416, 1997 WL 718419, at *3 (Tenn. Ct. App. Nov. 19, 1997) *perm. app. denied* (Tenn. May 26, 1998). Ms. Boyd's complaint in this case was accompanied by no competent evidence of her plea agreement. Consequently, the trial court did not err in dismissing this portion of the case for failure to state a claim.

Finally, Ms. Boyd takes issue with a number of the hearing officer's questions and comments during her parole hearing. She speculates about what his remarks may have shown he was considering in making his decision. Our review of the record indicates that none of the hearing officer's remarks show that he recommended denial of parole out of caprice or that his decision rested on a basis the law forbids. In reality, this portion of Ms. Boyd's argument seeks to draw the courts into re-evaluating the intrinsic correctness of the Board's 1997 decision to deny parole. That is beyond the scope of the writ she seeks.

**II.**

We affirm the dismissal of Ms. Boyd petition and remand the case to the trial court for whatever further proceedings may be required. We tax the costs of this appeal to C. D. Boyd for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE